AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Western District of Texas

FILED
December 26, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: __Myrna Gallegos__
DEPUTY

| | |
|---|---|
| United States of America<br>v.<br><br>(1) Francisca AGUILAR;<br>(2) Edgar Daniel CHACON;<br>(3) Sayra Ivette CHACON;<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. EP-24-MJ-5096-ATB (1,2,3) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 20, 2024__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 (a)(2) and (a)(2)(B)(ii) | Knowing and in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brought to and attempted to bring to the United States in any manner whatsoever such alien, regardless of any official action which may later be taken with respect to such alien, for the purpose of commercial advantage and private financial gain. |

This criminal complaint is based on these facts:

☒ Continued on the attached sheet.

_____
Complainant's signature

Erika K. Robles
CBP Enforcement Officer

Sworn to before me and signed in my presence.

Date: December 26, 2024

City and state: El Paso, Texas

_____
Judge's signature
Anne T. Berton
United States Magistrate Judge

Complaint sworn to telephonically on December 26, 2024 at 1:35 PM and signed electronically. FED.R.CRIM.P. 4.1(b)(2)(A)

## FACTS

That on or about December 20, 2024, the DEFENDANT 1, Francisca AGUILAR, DEFENDANT 2, Edgar Daniel CHACON and DEFENDANT 3, Sayra Ivette CHACON, all United States citizens, applied for admission into the United States at the Paso Del Norte (PDN) Port of Entry in El Paso, Texas, located in the Western District of Texas, with the Defendants in the vehicle, was an alien to the United States who did not have permission to be in or remain in the United States, a minor child with the initials of J.A.M.C., who the Defendants all represented to officers to be a U.S. Citizen, with the initials of A.C.L.

DEFENDANT 1 was the driver of a white in color sport utility vehicle bearing New Mexico license plates and was accompanied by three passengers, DEFENDANT 2, DEFENDANT 3, and the alien minor, whose true initials are J.A.M.C. DEFENDANT 1 presented to Customs and Border Protection Officer (CBPO) Cisneros, the primary officer, her California birth certificate along with her New Mexico driver's license bearing her name, date of birth and photograph. DEFENDANT 1 presented three (3) state of Arizona birth certificates on behalf of the three passengers. DEFENDANT 1 indicated to CBPO Cisneros that the documents belonged to her adult son, DEFENDANT 2, (who was the front passenger), adult daughter, DEFENDANT 3, (who was the rear driver side passenger) and her purported minor nephew, A.C.L., (the alien minor, true name J.A.M.C., who was the rear side passenger). DEFENDANT 1 also provided CBPO Cisneros with two (2) New Mexico identification cards that belonged to DEFENDANT 2 and DEFENDANT 3, bearing their names, date of births and photographs. CBPO Cisneros asked DEFENDANT 1 the purpose of their trip to Mexico. DEFENDANT 1 stated they had gone to see the dentist. CBPO Cisneros asked DEFENDANT 1 where they were currently going and DEFENDANT 1 replied that they were going home to Albuquerque, N.M. CBPO Cisneros took the birth certificates and interviewed DEFENDANT 2 and DEFENDANT 3 to establish their citizenship. CBPO Cisneros asked DEFENDANT 3 how she was related to J.A.M.C. and DEFENDANT 3 replied he was her cousin. CBPO Cisneros asked DEFENDANT 1 how she was related to J.A.M.C. and DEFENDANT 1 stated that J.A.M.C. was her husband's nephew. CBPO Cisneros asked DEFENDANT 1 if she knew if her nephew (J.A.M.C.) was a United States citizen to which DEFENDANT 1 stated that J.A.M.C. was a United States citizen. CBPO Cisneros asked J.A.M.C. to state his full name, and J.A.M.C. gave the name A.C.L. which was depicted on the Arizona birth certificate that was presented on his behalf by DEFENDANT 1. CBPO Cisneros asked the J.A.M.C. to state his date of birth, and J.A.M.C. stood quiet while DEFENDANT 1 answered for him. CBPO Cisneros noticed that DEFENDANT 1 kept interrupting the primary inspection of J.A.M.C., and that J.A.M.C. would turn and look at DEFENDANT 1 after each question. Before escorting the vehicle to secondary for further inspection DEFENDANT 1 told CBPO Cisneros that the J.A.M.C.'s uncle was not her husband, but he was instead her boyfriend.

DEFENDANT 1 and J.A.M.C. were escorted to Passport Control Secondary (PCS) for further inspection by CBPO Cisneros. While being escorted, DEFENDANT 1 told CBPO Cisneros that she and J.A.M.C.'s uncle were not together anymore, changing her original statement for a second time. In PCS, DEFENDANT 1 was asked by CBPO Escareno who she was traveling with, DEFENDANT 1 stated that she was traveling with her two adult children (Defendant 2 and Defendant 3) and her nephew. CBPO Escareno asked DEFENDANT 1 for the location of J.A.M.C.'s parents, and DEFENDANT 1 stated that they were in Albuquerque, N.M. CBPO Escareno asked DEFENDANT 1 why her nephew (J.A.M.C.) was traveling with her, to which DEFENDANT 1 stated that he had been staying with her for the last two weeks. CBPO Escareno asked DEFENDANT 1 if she could provide the mother's phone number and DEFENDANT 1 replied "yes, I can give it to you" and proceeded to provide the phone number. CBPO Escareno asked DEFENDANT 1 if she had anything else to say and DEFENDANT 1 admitted that she did not know J.A.M.C., and that his mother had asked her to bring him into the United States, and that she was going to be paid $300 dollars for gas. CBPO Escareno contacted J.A.M.C.'s mother via telephone. J.A.M.C.'s mother stated she had been in contact with DEFENDANT 1 to make arrangements to bring her son (J.A.M.C.) into the United States for $5,000 dollars.

DEFENDANT 1 was served with form I-214 Warning as to Rights (English Version), which she read, understood, signed, and invoked her right to legal representation. DEFENDANT 2 was served with form I-214 Warning as to Rights (English Version), which he read, understood, signed, and invoked his right to legal representation. DEFENDANT 3 was served with form I-214 Warning as to Rights (English Version), which she read, understood, signed, and waived her right to legal representation.

During a sworn statement DEFENDANT 3 admitted to being fully aware that they were going to attempt to smuggle the little boy (J.A.M.C.) into the United States. DEFENDANT 3 stated that they all (DEFENDANT 1, DEFENDANT 2 and DEFENDANT 3) knew that they were going to pick up a boy in Ciudad Juarez, Mexico. DEFENDANT 3 stated that a woman dropped off the boy (J.A.M.C.) at the dentist office in Ciudad Juarez, when they were finished. DEFENDANT 3 stated that on their way to the bridge her mother (DEFENDANT 1) instructed DEFENDANT 2 and DEFENDANT 3 to say that the J.A.M.C. was their cousin, A.C.L. DEFENDANT 3 declared that it was not the first time they had smuggled an alien into the United States. DEFENDANT 3 stated that she had helped her mother smuggled a little girl before. DEFENDANT 3 stated that she did not receive any money but that her mother (DEFENDANT 1) did, but does not know how much.

At approximately 1712 hours that same day, DEFENDANT 1 approached CBPO Shindo and voluntarily stated that she wanted to give a statement. DEFENDANT 1 was served for the second time with form I-214 Warning as to Rights (English Version), which she read, understood, signed, and waived her right to legal representation. DEFENDANT 1 declared that she was going to get paid $5,000 dollars for smuggling the boy (J.A.M.C.) and had already received an initial payment of $2,000 dollars. DEFENDANT 1 stated that she had previously smuggled two (2) other alien children and had gotten paid $5,000 dollars for each. The DEFENDANT stated that her daughter (DEFENDANT 3) had been with her the two other times, but it was the first time her son (DEFENDANT 2) was with her. DEFENDANT 1 admitted that her two adult children (DEFENDANT 2 and DEFENDANT 3) were aware of the smuggling scheme. DEFENDANT 1 stated that she was transporting J.A.M.C. to Albuquerque, NM. Agents were able to confirm that J.A.M.C. is in fact an alien to the United States, and that he does not have permission to be in or remain in the United States

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

## CRIMINAL AND IMMIGRATION RECORD

**DEFENDANT**
**CRIMINAL RECORD:**
Arrested: Domestic violence assault 01/16/2000; Aggravated Domestic violence 02/06/2001; Contempt of court 09/08/2006; Driving w/Lic Susp/Revoked/Canceled 11/19/2008.

**IMMIGRATION RECORD:**
None.

**DEFENDANT 2**
**CRIMINAL RECORD:**
None.

**IMMIGRATION RECORD:**
None.

**DEFENDANT 3**
**CRIMINAL RECORD:**
None.

**IMMIGRATION RECORD:**
None.